IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| RICHARD E. PHELAN and | * | Chapter 13 |
| LINDA L. PHELAN | * | |
|     Debtors | * | Case No.: 1:15-BK-04101 MDF |
| | * | |
| STEPHANIE E. CHERTOK | * | |
|     Movant | * | |
| | * | |
|     v. | * | |
| | * | |
| RICHARD E. PHELAN and | * | |
| LINDA L. PHELAN | * | |
|     Respondents | * | |

## OPINION

Before me is the Amended Motion to Convert Case to Chapter 7 ("Motion") filed by Stephanie E. Chertok ("Chertok") and the Answer filed by Richard E. and Linda L. Phelan ("Debtors"). For the reasons set forth below, the Motion is denied and the Motion of the Chapter 13 Trustee to dismiss Debtors' case is granted.[1]

### I. Facts and Procedural History

Debtors filed their petition under Chapter 13 on September 23, 2015. At the time the petition was filed, Richard E. Phelan ("Phelan") operated a business in Carlisle, Pennsylvania under the name Emporium Design Concepts, Inc. ("Emporium").[2] Emporium conducted operations in a commercial space Phelan leased from Chertok in 2006 in his individual capacity. The lease agreement consisted of two letters, a proposal letter from Phelan to Chertok and an

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a non-*Stern* core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052.

[2] Both Debtors are officers of Emporium, but only Phelan entered into the lease with Chertok. The lease was executed several months before Emporium was incorporated.

acceptance letter from Chertok to Phelan incorporating certain changes that were agreed to by both parties. Although Phelan is the lessee under the lease, the agreement states that the lease will be guaranteed by Phelan and by "named corporation." No evidence was introduced that Emporium or any other "named corporation" executed a guarantee. The lease agreement did require Phelan to restore the property to any particular condition when he vacated. It did specify, however, that Phelan was obligated to spend $150,000 on demolition and remodeling and that "all improvements shall remain when Tenant ultimately vacates the property."

Debtors reported on the schedules filed in the case that they owned stock in Emporium, but the lease between Phelan and Chertok was not disclosed. On Schedule B, Debtors included "light fixtures, furniture, dishes, stained glass, stuffed animals, and cast iron signs" constituting Emporium's inventory as assets of Debtors' estate. After the petition was filed Phelan continued to operate the business, but he took no action to assume or reject the lease.

After Debtors filed their petition, they were slow to file the requisite schedules and statements. They requested and were granted two extensions to file their schedules, statements, and plan. The order granting the second extension to file documents, which provided a deadline of December 6, 2015, specified that no further extensions would be granted. The documents were not filed timely, and a further request for an extension was filed on December 7, 2015. The motion was denied, and the case was dismissed. After Debtors filed a motion to reopen the case on December 18, 2015 along with the missing schedules, statements and Chapter 13 plan, the order dismissing the case was vacated.

Debtors' plan included monthly payments to the trustee, but was funded primarily through the liquidation of real estate and other assets. After several creditors and the Chapter 13 trustee filed objections to Debtors' plan, an order was entered on February 24, 2016 directing

2

Debtors to file all outstanding tax returns by April 24, 2016 and an amended plan by May 24, 2016. Debtors failed to comply with the order and requested a further extension to file tax returns, with the concurrence of the Chapter 13 trustee, until September 1, 2016, which was granted by the Court.

In the meantime, Debtors filed a motion to sell their residence in Carlisle, Pennsylvania. In connection with the sale of their home, Debtors also proposed to sell certain household furnishings and personal property at public auction. It was in connection with this proposed sale that Chertok first appeared in the case. She objected to the sale of personal property, asserting that some of the items being offered for sale were fixtures removed from Emporium in violation of the lease. Chertok's objection was resolved through a stipulation between Debtors and Chertok, which provided that the auction sale would be conducted according to certain procedures and would not include items from Emporium. The July 11, 2016 stipulation also specified terms for the continued operation of Emporium until termination under the terms of the lease in August 2016. Among other things, the stipulation provided that when Debtors vacated the leased premises, "the cost of complying with the lease terms and state law shall be an expense of administration." Stipulation, Docket # 77, ¶ 18. However, the parties were unable to agree as to what actions Phelan was required to take under the lease to comply with its terms. The stipulation was approved by the Court on July 12, 2016.

On July 18, 2016, Debtors filed a motion proposing to sell the Emporium inventory at two public sales to be held on July 30, 2016 and August 20, 2016. Chertok objected to the sale asserting that Debtors had included fixtures or improvements from the store in the inventory scheduled to be auctioned. Chertok also alleged that leased space had been damaged by the

3

removal of property attached to walls, ceilings, and floors. After a hearing on the motion and Chertok's objection, an order was entered authorizing the sale subject to certain conditions. The conditions included a requirement that Debtors' auctioneer file a fidelity bond with the Court and that after the auctioneer's commission and expenses were paid all funds were to be held in escrow by Debtors' counsel. Order, Docket # 105. The order also directed Debtors to file "a report of sale accounting for all proceeds received from each auction sale and attaching the tear sheets received from the Auctioneer" and to file a verified accounting of all proceeds received from Emporium and " the receipt and disposition of all proceeds from the sale of any personal property at the store from June 1, 2016 through the end of the lease term." *Id.* Debtors also were directed to file "a verified accounting of all personal property, if any, removed from [Emporium] from June 1, 2016 through the end of the lease term, identifying the receipt and disposition of all proceeds from the sale of such personal property and, if not sold, identifying each item of personal property removed from [Emporium] and the current location of such personal property." *Id.*

On August 12, 2016, Debtors filed a report of sale for the July 30 auction. A few days later, the Chapter 13 trustee filed a motion to dismiss the case because tax returns had not been filed making it impossible for Debtors to confirm a Chapter 13 plan. Debtors concurred in the motion to dismiss. Chertok objected to dismissal of the case arguing that the case had been filed in bad faith and should be converted to Chapter 7. Chertok also filed a separate motion seeking conversion of Debtors' case, which was amended on November 28, 2016. Debtors' filed a summary judgment motion on December 2, 2016, which the Court ruled would be heard in connection with trial on the Motion and with the hearing on Chertok's administrative expense claim.

## II. Discussion

*A. Did Debtors engage in bad faith conduct both before and after filing their petition?*

Chertok asserts that Debtors filed their bankruptcy in bad faith and have abused the bankruptcy process on numerous occasions since filing their petition. Grounds for this assertion may be divided into two categories. First, Chertok asserts that Debtors have failed to fully disclose to the Court their assets and liabilities. Specifically, Chertok asserts that Debtors either failed to list or under valued their interest in three businesses, Phelaro, Inc., Gingerbread Man, Inc., and Emporium. It is undisputed that they failed to list the lease between Chertok and Phelan for the Emporium store. Chertok also asserts that Debtors failed to fully disclose the income they received from two agreements of sale with their children and from the Mechanicsburg rental properties.

In the second category of grounds supporting conversion, Chertok states that Debtors failed to comply with a court-ordered stipulation regarding the operations of Emporium between July 11, 2016 and August 31, 2016. Further, Chertok asserts that Debtors flagrantly ignored several court orders specifying how the sale of the Emporium inventory should be conducted and specifying the accounting procedures for the sale proceeds. By failing to comply with the Court ordered accounting requirements, Chertok asserts that Emporium assets were dissipated thus reducing the available funds to satisfy claims she intended to assert for damages when Phelan vacated the premises.

Chertok's motion to convert is grounded in 11 U.S.C. § 1307(c). Section 1307(c) provides on request of a party in interest or the United States trustee and after notice and hearing, the court may convert a case under Chapter 13 to a case under Chapter 7 or dismiss the case.

5

Whether to dismiss or convert a case upon cause shown lies within the discretion of the bankruptcy court. *In re Myers,* 491 F.3d 120, 127 (3d Cir. 2007). When assessing whether a Chapter 13 case should be converted or dismissed, it is appropriate to consider the totality of the circumstances. *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)*;*; *de la Salle v. U.S. Bank, N.A. (In re de la Salle)*, 461 B.R. 593, 605-06 (9th Cir. B.A.P. 2011). In an examination of the totality of the circumstances, a court must determine whether a debtor has abused the "provisions, purpose or spirit" of the Bankruptcy Code and whether the filing is "fundamentally fair" to creditors. *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) *cited in Karanikas v. Cartwright (In re Cartwright*), No. 1-13-bk-03952MDF, 2014 WL 2574502 at *4 (Bankr. M.D. Pa. June 9, 2014).

When assessing whether a case has been filed or prosecuted in bad faith the initial burden is on the objecting creditor to produce evidence challenging a debtor's good faith. If the creditor meets his burden, then the burden shifts to the debtor to prove the petition was filed in good faith. *Id.* (citing *Frank v. Tamecki (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000).

Bad faith may be present when a debtor is not forthcoming with the bankruptcy court and with creditors. A debtor is obligated to provide full disclosure of his or her financial affairs, including a complete and accurate list of assets and liabilities. *Marrama v. Citizens Bank (In re Marrama)*, 430 F.3d 474, 478 (1st Cir. 2005), *aff'd,* 549 U.S. 365 (2007) ("Those who seek the shelter of the bankruptcy court [must] not play fast and loose with their assets or with the reality of their affairs.") (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)). When debtors undervalue their assets, they are not being candid with the court or with creditors regarding their financial affairs. *In re Stevens*, BHN 008, 2013 WL 5229801, *4 (Bankr. D. N.H. Sept. 17, 2013) (holding that intentional undervaluation of an asset may constitute bad faith).

6

Here, Debtors reported on their schedules that they held accounts receivable from their son and from their daughter and her husband. Having sold the Gingerbread Man business in Carlisle to their son in 2006, they were not required to report the business as an asset. In 2006 Phelan sold the personal property, including the liquor license, owned by Phelaro to their daughter and son-in-law, but Phelaro retained an interest in the Mechanicsburg real estate. Although the information on Schedule B describing the asset was cryptic, further information provided by Phelan established that rental payments made to Phelaro for the use of the premises as a restaurant and for the apartments were being remitted to the mortgage holder, Metro, rather than being paid to Phelaro. Therefore, I find the information included on the schedules as to these assets to be adequate.

Phelan's explanation for the representation on Schedule B that both Phelaro and Emporium had zero value is misleading.[3] Both corporations owned assets at the time of the filing, and no financial statements were provided to enable the trustee or creditors to determine the net equity in either corporation. It also was misleading to suggest that Metro was only secured by Phelaro assets when the bank is cross collateralized against Debtors' two residences and the Mechanicsburg property owned by Phelaro, including rents. Further, the Court is troubled by Debtors' failure to list the lease between Chertok and Phelan, when Emporium was listed as a source of income on Schedule I. Both the failure to list the Emporium lease and the value ascribed to Emporium indicate lack of good faith. The valuation of Emporium at zero is

---

[3]Debtors filed Amended Schedules A and B continuing to list the values of the two corporations as zero, but also providing additional information to justify the valuations.

particularly egregious because as Debtors later admitted in their amended schedules, the inventory, which was estimated to be worth as much as $25,000 was unencumbered.[4]

Phelan also demonstrated a lack of good faith during the course of the bankruptcy in regard to the liquidation of the Emporium assets. After Chertok objected to the auction sale of Debtors' household items, arguing that fixtures from Emporium were included in the sale, the parties entered into a stipulation regarding the disposition of the sale proceeds and the continued operation of Emporium. Under the terms of the stipulation, which was approved by the Court, 50% of the *gross* revenues were to be deposited with Debtors' counsel. Phelan admits that he did not comply with this provision, instead arguing that there were no revenues in excess of expenses. While the checking account summary prepared by Debtors' accountant supports the argument that Emporium had a net cash outflow during the weeks it was winding up operations, the appropriate course of action would have been to seek relief from order, not to ignore it.

In isolation, Debtors' failure to comply with the terms of the stipulation would not weigh heavily in a bad faith determination, but Phelan chose to ignore other court orders in connection with the liquidation of Emporium's assets. On July 28, 2016, the Court entered an order authorizing two auction sales of Emporium's inventory. Under the terms of the order, the auction was not to be conducted unless the auctioneer obtained a fidelity bond. Although the auctioneer did not obtain the appropriate bond, Phelan elected to conduct the July sale anyway. When the auctioneer was unable to conduct the August sale, Phelan proceeded to auction the remaining

---

[4]Linda Phelan is an officer of Emporium, and she signed the petition, schedules and statements filed in the case. There was no evidence offered at trial, however, that she was involved in winding up Emporium's operations or that she participated in the auction sales. Information for the preparation of the schedules and statements was supplied to Debtors' counsel by Phelan. Accordingly, I do not find that Linda Phelan's petition was filed in bad faith.

inventory himself. Further, Phelan failed to comply with the requirement in the sale inventory order that a verified accounting of all proceeds received from Emporium's operations and all disbursements made from receipts be filed for the period June 1, 2016 through August 31, 2016. For any items not sold, Phelan was to report all items removed from the store. While some of the difficulties encountered in conducting the auction sales were not Phelans' fault, given the concerns expressed by Chertok that items from the store were being removed and "sold out the back door," Phelan's failure to follow the procedures directed by the Court supports a finding that Phelan engaged in bad faith conduct. *See Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008) (holding that debtor's use of arbitration proceeds to remodel home even absent a wrongful motive was in defiance of specific order to deposit funds with Chapter 13 trustee and, thus, in bad faith). Undervaluing assets and defying court orders are the type of debtor conduct that the Supreme Court characterized as "atypical" and indicative of bad faith. *Marrama*, 549 U.S. at 375 n. 11. Accordingly, I conclude Phelan did not prosecute his case in good faith.[5]

---

[5] Debtors have not argued that they have an absolute right to dismiss their Chapter 13 case although 11 U.S.C. § 1307(b) states "on request of the debtor at any time, if the case has not been converted under section 706, 1112 or 1208 of this title, the court shall dismiss a case under this chapter." Had this argument been made, I would have found it unavailing. I concur with the reasoning of the Ninth Circuit that in *Marrama* the Supreme Court made it clear that "even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Rossen*, 545 F.3d at 773-74 n. 12. *Accord, Taylor v. Winnecour (In re Taylor),* 462 B.R. 527, 532 (Bankr. W.D. Pa. 2011); *In re Caola,* 422 B.R. 13, 21 (Bankr. D. N.J. 2009); *In re Armstrong,* 409 B.R. 629, 633 (Bankr. E.D.N.Y. 2009). But see, *Jacobsen v. Moser (In re Jacobsen),* 609 F.3d 647, 660 (5th Cir. 2010) (holding more narrowly that "a bankruptcy court has the power to grant an outstanding conversion motion and deny a bad-faith debtor's request for dismissal only if made in response to a conversion motion").

*B. Is conversion of the case in the best interest of creditors and the estate?*

Once a bankruptcy court determines that bad faith is present, it must consider which course of action is more appropriate – conversion to Chapter 7 or dismissal. Courts have considered a variety of factors when assessing which option would be in the best interest of creditors and the estate. Several courts have relied on factors set forth in a leading bankruptcy treatise including: (a) whether there are preferential payments to be recovered, (b) whether there would be a loss of rights if the case were dismissed, (c) whether the debtor would refile after dismissal, (d) the ability of a trustee to reach assets in Chapter 7, (e) which option would maximize the estate's value as an economic enterprise, (f) whether remaining issues would be better resolved in another forum, (g) whether the case is a single asset case, (h) whether creditors are in need of chapter 7 to protect their interests, (i) whether property needs to be administered under a confirmed plan, and (j) whether a trustee is needed to address environmental and safety issues. 7 Collier on Bankruptcy ¶ 1112.04[7] at 112-41 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) *cited in In re Babyoff*, 445 B.R. 64, 81-82 (Bankr. E.D.N.Y. 2011) (citing cases).

Other factors that may lead a court to prefer dismissal over conversion are: (a) the debtor no longer wishes to utilize the bankruptcy process for any of its intended purposes, (b) pending issues are in the nature of a two-party disputes involving only state law issues, (c) a creditor's preference for conversion is partially attributable to forum shopping, and (d) dismissal preserves the time and resources of the bankruptcy court otherwise spent on nonbankruptcy related issues. *In re Mazzocone*, 183 B.R. 402, 411-14 (Bankr. E.D. Pa. 1995), *aff'd,* 200 B.R. 568 (E.D. Pa. 1996)

10

Case 1:15-bk-04101-MDF    Doc 176    Filed 02/21/17    Entered 02/22/17 09:10:35    Desc
Main Document    Page 10 of 13

The Chapter 13 trustee requested dismissal of the case and Debtors concurred in the request. Debtors are unable to confirm a plan due to numerous unfiled tax returns. The only party suggesting that the case should be converted to Chapter 7 is Chertok. She has asserted that conversion to Chapter 7 will allow her to obtain payment for her administrative claim for damages to the leased property and for removal of fixtures.

A determination of Chertok's right to damages under the lease and the classification of that claim under the Bankruptcy Code is far from straightforward. Under § 365(d)(4)(A), an unexpired lease of nonresidential real property where the debtor is the lessee is deemed rejected, and must be surrendered to the lessor, the earlier of the date the plan is confirmed or 120 days after the order for relief. 11 U.S. C. § 365(d)(4)(A). Section 365(d)(4)(A) applies in Chapter 13 cases. *See In re Slack,* 280 B.R. 604, 607 (Bankr. D. N.J. 2002); *In re Cho*, Case No. 15-20638, 2016 WL 3597890 at *1 (Bankr. D. Maine, June 27, 2016) (citing cases).

Here, the lease was deemed rejected when it was not assumed on January 21, 2016, months before Chertok became involved in the case. Rejection of the lease is treated as a breach of the lease immediately before the date the petition was filed. *Slack,* 280 B.R. at 607. Therefore, she was entitled at that point to move for relief from the stay. Any damages arising from the breach are deemed to have arisen pre-petition under § 502(g). *Miller v. Chateau Cmtys., Inc. (In re Miller)*, 282 F.3d 874, 878 (6th Cir. 2002). Therefore, rather than an administrative claim, damages from a rejected lease are considered pre-petition claims. In some circumstances, however, courts have determined that a lessor can waive the automatic rejection of § 365(d)(4) through certain post rejection conduct. *See George v. City of Morro Bay (In re George)*, 177 F.3d

11

885, 888-89 (9th Cir. 1999). Accordingly, it is unclear at this point, whether Chertok's claim, if allowed, could be considered an administrative claim or a pre-petition claim.

The extent to which Chertok's claim may be allowed also is at issue. Under Pennsylvania law, a tenant is required to return the leasehold property to the landlord in the condition in which it was received, reasonable wear and tear excepted. *U.S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 174 (3d Cir. 1981) (applying Pennsylvania law); *Versatile Metals, Inc. v. Union Corp.* (E.D. Pa. 1988) (applying Pennsylvania law). Specific provisions in the lease, however, may modify this duty. As noted earlier, there is no specific provision in the lease requiring Phelan to restore the property to some specified condition at the term of the lease. Chertok, however, asserts that because the lease required Phelan to expend $150,000 of his funds for demolition and remodeling of the leased premises, she is entitled to the benefit of these improvements. In support of this position, she presented evidence on the condition of the property after Phelan made extensive renovations when he assumed the tenancy as compared to the condition of the property after he vacated the premises.

The difficulties inherent in evaluating Chertok's claim against Phelan supports dismissal rather than conversion of the case. If the case is converted, the issue of whether Chertok has an administrative claim or a prepetition claim may have to be litigated. If the case is dismissed, Chertok's claim against Phelan may be litigated in state court absent the complexities created by the intersection of state landlord tenant law and the Bankruptcy Code.

Other factors support dismissal rather than conversion as well. Chertok will not lose her right to recover from Phelan if the case is dismissed. This is primarily a two-party dispute tangential to the bankruptcy case involving state law questions. Chertok may have fewer assets

12

Case 1:15-bk-04101-MDF    Doc 176    Filed 02/21/17    Entered 02/22/17 09:10:35    Desc
Main Document      Page 12 of 13

from which to satisfy a claim outside of bankruptcy because of state law protection of property held as tenants by the entirety, but not having found Linda Phelan to have filed in bad faith, this result does not seem inequitable. To some extent, Chertok's preference for conversion is partially attributable to forum shopping. Finally, considering the potential complexity of further proceedings, I find that dismissal preserves the time and resources of the bankruptcy court otherwise spent on nonbankruptcy related issues.

### III. Conclusion

For the reasons set forth above, the Court finds that it is more appropriate to grant the Chapter 13 Trustee's motion to dismiss and deny Chertok's motion to convert. But also having determined that Phelan acted in bad faith both in the preparation of his schedules and statements and during the administration of the Chapter 13 case, it is appropriate to enter an order dismissing the case, but barring Phelan from filing a petition under the Bankruptcy Code for a period of two years from the date of the Order entered dismissing the case.

An appropriate order will be entered.

By the Court,

*Mary D France*
Bankruptcy Judge (VK)

Date: February 21, 2017

13

Case 1:15-bk-04101-MDF    Doc 176    Filed 02/21/17    Entered 02/22/17 09:10:35    Desc
Main Document    Page 13 of 13